IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:2023-CV-1101

ALLIANCE COMMISSION
ENHANCEMENT, LLC

    Plaintiffs,

v.

PAUL ROBERTS and TAMARA
ROBERTS

    Defendants.

**COMPLAINT**

COMES NOW Plaintiff Alliance Commission Enhancement, LLC, complaining of Defendants Paul Roberts and Tamara Roberts, and alleges and says:

1. Plaintiff Alliance Commission Enhancement, LLC, ("Plaintiff" or "ACE") is a North Carolina limited liability company with its principal place of business in Alamance County, North Carolina.

2. Upon information and belief, Defendants Paul Roberts and Tamara Roberts (together, "Defendants") are citizens and residents of the State of Texas.

3. The amount in controversy in this matter is in excess of $75,000 (seventy-five thousand dollars) and the parties are citizens and residents of different states. Accordingly, this Court has jurisdiction over this matter pursuant to 28 USC Sec. 1332.

4. Defendants were previously independent contractor sales agents ("Agents") associated with Superior Performers, LLC, d/b/a National Agents Alliance ("NAA"), and

its predecessor, Superior Performers, Inc. Defendants ceased being associated with NAA more than sixty (60) days prior to the filing of this lawsuit.

5. ACE was created to facilitate a program ("the Insurance Program") offered to certain NAA Agents as an additional benefit of affiliation with NAA.

6. On or about January 14, 2019, pursuant to the Insurance Program, Defendants each voluntarily entered into agreements with ACE, including Split Dollar Agreements and a Collateral Assignment Agreements, which are referred to hereinafter collectively as "the Insurance Agreements"[1]. Pursuant to the Insurance Agreements: Defendants would each purchase an insurance policy covering their respective lives from a designated insurance carrier ("the Insurer"); ACE would pay the premiums due on that policy; each premium payment by ACE would be treated as a loan ("the Premium Loans") from ACE to each Defendant; each Defendant would be required to pledge the policy as collateral to secure his or her obligation to repay the Premium Loans; and the terms of the repayment of the Premium Loans would be governed by the Insurance Agreements.

7. Pursuant to the Insurance Agreements, each Defendant purchased a life insurance policy from the Insurer ("the Subject Policies") covering her or his life.

8. ACE made all required premium payments on the Subject Policies to the Insurer.

---

[1] Because the Insurance Agreements contain information that is confidential as to both ACE and Defendants, and because Defendants signed (and presumably have copies of) the Insurance Agreements, Plaintiff is not attaching such documents to this Complaint. However, ACE will promptly provide copies to either Defendants or the Court upon request, with any filing with the Court being done under seal.

9. The premium payments made by ACE on the Insurance Policies constitute loans to Defendants ("the Defendants' Premium Loans").

10. Defendants' Premium Loans bear interest at a contractually-agreed rate, compounded annually.

11. The total principal and accrued, unpaid interest due on the Defendants' Premium Loans from each Defendant to ACE at any given time is referred to in the Insurance Agreements, and herein, as "the Liabilities."

12. At any given time, the Subject Policies have a "Cash Surrender Value" ("CSV").

13. The Insurance Agreements contain provisions that govern the disposition of the Subject Policies regardless of whether the insured committed a Material Breach (as defined in the Insurance Agreements) or not. ACE gave Defendants written notice of their termination more than thirty (30) days before the filing of this Complaint, per Para. 8(a) of the parties' Split Dollar Agreement.

14. Pursuant to the Insurance Agreements (including specifically Para. 8 and 9 of the Split Dollar Agreement), if an insured ceases being associated with NAA and such person has *not* committed a Material Breach of the Insurance Agreements, then the insured has the right to purchase the Insurance Policies by paying ACE an amount the calculation of which is described in the Insurance Agreements ("the Purchase Amount").

15. Pursuant to the Insurance Agreements, upon a "Material Breach" of the Insurance Agreements: the insured forfeits any interest in the Insurance Policy; the insured

3

shall, within thirty (30) days, execute any documents required by ACE to transfer the Insurance Policy to ACE; and insured shall, within sixty (60) days of the date of the required transfer of the Insurance Policy to ACE, pay ACE an amount equal to the difference between the CSV of the Insurance Policy and the Liabilities, if as of the date of the transfer the amount of the Liabilities are greater than the CSV of the Subject Policy.

16. Regardless of whether Defendants have committed a Material Breach of the Insurance Agreements, they were obligated to transfer the ownership of the Insurance Policies to ACE (or as ACE directed) at a point prior to the filing of this Complaint.

17. Because Defendants are obligated to transfer the Insurance Policies to Plaintiff regardless of whether Defendants had committed a Material Breach, Plaintiff has demanded that Defendants execute the documents necessary to transfer the ownership of their Subject Policies to ACE. Despite repeated requests, Defendants have failed to execute the necessary Change of Ownership forms.

18. At this time, ACE does *not* assert that Defendants have committed a Material Breach of the Insurance Agreements. Instead, they simply seek to enforce the provisions of the Insurance Agreements that apply in the absence of a Material Breach by having the Subject Policies transferred to ACE.

FIRST CAUSE OF ACTION
(Breach of Contract and Transfer of Policies to ACE)

19. The foregoing Paragraphs are incorporated herein by reference.

20. Defendants are required to execute the documents necessary to transfer the Subject Policies to ACE. Defendants have failed to do so despite repeated requests to both Defendants and their counsel.

21. ACE is entitled to an Order directing Defendants to execute the required documents to effectuate the transfer of the Subject Policies to Plaintiff. In the alternative, ACE is entitled to an Order from the Court transferring each Defendant's rights and interests in the Subject Policies to ACE to the same effect as if such Defendant had executed the documents otherwise required for such a transfer.

22. Defendants' conduct constitutes breach of the Insurance Agreements. Plaintiff is entitled to recover such damages, costs, and fees as are owed for such breaches, in amounts to be shown at trial.

WHEREAS, Plaintiff Alliance Commission Enhancement, LLC, respectfully prays that the Court:

1. Order each Defendant to transfer their respective Subject Policy to Plaintiff Alliance Commission Enhancement, LLC, or in the alternative enter an Order transferring such rights and interests in the Subject Policies to ACE;

2. Award ACE such damages, costs, and fees as may be owed due to the breach of the Insurance Agreements in the absence of a Material Breach.

3. Tax the costs of this action against Defendants; and

4. Provide such other relief as the Court may deem just and proper.

This the 18th day of December, 2023.

/s/ Robert J. King III
Robert J. King III
NC State Bar No. 15946
rking@brookspierce.com
William P. H. Carey
NC State Bar No. 7651
bcary@brookspierce.com

OF COUNSEL:

BROOKS, PIERCE, McLENDON,
   HUMPHREY & LEONARD, LLP
PO Box 26000
Greensboro, NC 27420
Telephone: 336-373-8850